**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **JOSEPH BOND AND NICOLE THOMPSON**, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **LIGHTHOUSE INSURANCE GROUP, LLC** a | ) | |
| Florida limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Joseph Bond and Nicole Thompson (collectively, "Plaintiffs") bring this Class

Action Complaint against Defendant Lighthouse Insurance Group, LLC ("Defendant" or

"LHIG") to: (1) stop Defendant's practice of placing calls using an "automatic telephone dialing

system" ("ATDS") and/or an artificial or pre-recorded voice to the cellular telephones of

consumers nationwide without their prior express consent; (2) enjoin Defendant from continuing

to place autodialed and pre-recorded telephone calls to consumers who did not provide their prior

express consent to receive them, or who revoked such consent; and (3) obtain redress for all

persons injured by Defendant's conduct. Plaintiffs also seeks an award of statutory damages to

the members of the Class, plus court costs and reasonable attorneys' fees.

Plaintiffs, for their complaint, alleges as follows upon personal knowledge as to himself

and his own acts and experiences, and, as to all other matters, upon information and belief,

including investigation conducted by his attorneys.

## PARTIES

1

1.      Plaintiff Bond is a natural person over the age of eighteen (18) and a resident of the State of Georgia. Plaintiff Bond resides in Atlanta, Georgia.

2.      Plaintiff Thompson is a natural person over the age of eighteen (18) and a resident of the State of Tennessee. Plaintiff resides in Chattanooga, Hamilton County, Tennessee.

2.      Defendant Lighthouse Insurance Group, LLC is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 6100 Rockside Woods Blvd. North, Suite 310, Independence, Ohio 44131.

## JURISDICTION & VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute.

4.      This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5.      This Court has personal jurisdiction over LHIG because it is headquartered in this Cuyahoga County, which is located within this District, LHIG solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in this District, solicits a significant amount of business within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in and/or

emanated from this District.

## COMMON ALLEGATIONS OF FACT

7.      Defendant LHIG is a licensed insurance agency that provides health insurance, Medicare, and supplemental insurance policies to tens of thousands of customers across several states.

8.       Unfortunately for consumers, LHIG casts its marketing net too wide. That is, in an attempt to aggressively promote its business and to generate leads for its financial products, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign, targeting at least the States where it serves as a licensed insurance agency, that repeatedly makes unsolicited autodialed phone calls to consumers' telephones including cellular telephones all without any prior express consent to make such calls.

9.      To make matters worse, LHIG places these calls to telephones using an ATDS without consumers' prior written express consent—which violates the TCPA.

10.     The Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* ("TCPA") and its implementing regulations, 47 C.F.R. § 64.1200, *et seq*. prohibit companies and persons, such as Defendant, from placing calls using an ATDS ("autodialed calls") to cellular telephones without first obtaining prior express consent. Defendant has violated, and continues to violate, the TCPA and its regulations by placing autodialed calls to cellphone subscribers who have not given prior express consent, orally or in writing, to receive such calls.

11.     In an effort to obtain leads for its services, LHIG made (or had made on its behalf) autodialed and pre-recorded calls to the cellular telephones of Plaintiffs and other members of the class without first obtaining express consent to do so—all in violation of the TCPA.

12.     The TCPA was enacted to protect consumers from unauthorized calls like those alleged in this Complaint: autodialed and pre-recorded calls placed to cellphone numbers without each consumer's prior express written consent.

13.     By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interrupted and interfered with Plaintiffs and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also injured the Plaintiffs and Class members by causing wear and tear on their phones, consuming battery life, and appropriating cellular minutes and data.

14.     At no time did Defendant obtain prior express consent from Plaintiffs or any of the Class members to receive autodialed and pre-recorded telemarketing calls.

15.     In making the phone calls at issue in this Complaint, Defendant and/or its agents utilized an ATDS. Specifically, the hardware and software used by LHIG and/or its agents has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously, without human intervention.

16.     Additionally, Defendant and/or its agents placed calls utilizing an artificial or pre-recorded voice. Specifically, on information and belief, Defendant hired Yodel Technologies,

4

LLC to place telemarketing calls on its behalf and for its benefit which featured "avatar" or "soundboard" technology. This technology involves humans who listen into a call and who attempt to press computer buttons to generate a pre-recorded response that would be consistent with what the called party may have said.

17.     Defendant knowingly made, and continues to make, telemarketing calls without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the alleged Class, it also intentionally and repeatedly violated the TCPA. Defendant was, and is, aware that the autodialed and pre-recorded calls described herein were made to consumers like Plaintiff who have not consented to receive them.

18.     By making unauthorized autodialed calls as alleged herein, LHIG has caused consumers actual harm, including the aggravation, nuisance and invasions of privacy that result from the receipt of such calls, the wear and tear on their cellphones, consumption of battery life, lost cellular minutes, loss of value realized for monies paid to their wireless carriers for the receipt of such calls, and in the form of the diminished use, enjoyment, value, and utility of their telephones and telephone plans. Furthermore, Defendant made the calls knowing they interfered with Plaintiffs and the other Class members' use and enjoyment of, and the ability to access, their cellphones, including the related data, software, and hardware components.

19.     To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval, and/or Defendant ratified the making of any such calls.

20.     To redress these injuries, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited prerecorded and/or autodialed calls to telephones. On behalf of the Class, Plaintiffs seek an

injunction requiring Defendant to cease all unauthorized autodialed calling activities and an award of statutory damages to the class members, together with pre and post-judgment interest, costs and reasonable attorneys' fees.

### FACTS SPECIFIC TO PLAINTIFF BOND

21.     Plaintiff Bond is the subscriber to and customary user of the personal cellular telephone number ending in 1282.

22.     On December 1, 2017, Plaintiff received two unsolicited, autodialed calls from the phone number 252.388.8025.

23.     On both calls Plaintiff heard dead air consistent with an autodialer/ATDS. He said "Hello" repeatedly until a person came on, a telltale sign of an ATDS.

24.     Plaintiff spoke with a representative who refused to identify himself or on whose behalf he was calling.

25.     When Plaintiff called the number back he heard a message or voice that said "Thank you for calling Lighthouse Insurance Group."

27.     On February 13, 2018, Bond received another call, this time from 252.562.9338.

28.     When he answered the phone, Bond again heard a delay indicative of an autodialer.

29.     Plaintiff spoke to Connor, who gave a website address of www.lighthousequotes.com.

30.     Plaintiff Bond does not have a relationship with Defendant, has never provided his telephone number to Defendant, and has never requested that Defendant or anyone else acting on Defendant's behalf, place autodialed calls to him or offer him its services. Plaintiff Bond has never provided any form of prior express written or oral consent for Defendant to place

6

prerecorded and/or autodialed calls to him and has no other prior relationship with Defendant. Simply put, Bond never provided any prior express written or oral consent to be called at all.

## FACTS SPECIFIC TO PLAINTIFF THOMPSON

31.     Plaintiff Thompson is the subscriber to and customary user of the personal cellular telephone number ending in 8820.

32.     Beginning on January 9, 2020, Thompson received a series of calls from the number 513-348-1282.

33.     Thompson received the calls from 513-348-1282 on January 9, 2020, January 15, 2020, March 20, 2020 (two calls), and March 25, 2020. Each of these calls featured an "avatar" artificial or pre-recorded voice.

34.     On information and belief, the calls were made by Yodel, a third-party hired by Defendant to place telemarketing calls on its behalf and for its benefit.

35.     Thompson does not have a relationship with Defendant, has never provided his telephone number directly to Defendant, and has never requested that Defendant place prerecorded calls to her or to offer its services. Simply put, Thompson has never provided any form of prior express written consent to Defendant to place prerecorded calls to her and has no business relationship with Defendant.

36.     Defendant was, and is, aware that the above described prerecorded calls were made to consumers like Plaintiff who have not consented to receive them.

37.     By making unauthorized prerecorded calls to Thompson and the alleged Class as alleged herein, Defendant has caused consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value

realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant made the calls knowing that they interfered with Plaintiff's and the other Class members' use and enjoyment of, and the ability to access, their cellphones, including all related data, software, and hardware components.

38.     To redress these injuries, Thompson, on behalf of himself and a Class of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited prerecorded to telephones. On behalf of the Class, Thompson seeks an injunction requiring Defendant to cease all unauthorized prerecorded calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs Bond and Thompson bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the Class defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's cellular telephone; (3) using the same equipment that was used to call the Bond; (4) for the purpose of selling LHIG's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Bond.

> **Pre-recorded No Consent Class:** All persons in the United States who (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's telephone; (3) for the purpose of selling Defendant's products and services; (4) using the same pre-recorded voice technology that was used to call Thompson; and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call Thompson.

40.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its

parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery.

41.    **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed autodialed and pre-recorded calls to thousands of consumers who fall into the defined Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

42.    **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct. Plaintiffs are members of the Classes.

43.    **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions, specifically class actions under the TCPA. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to either Plaintiff.

44.    **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent;

(c)     Whether the calls were made with the use of an ATDS;

(d)     Whether the calls featured an artificial or pre-recorded voice;

(e)     Whether a third party made the calls on Defendant's behalf for Defendant's benefit;

(f)     Whether the Plaintiff and the other members of the Class are entitled to statutory damages; and

(g)     Whether Defendant acted willfully so as to require an award of treble damages.

45.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On behalf of Bond and the Autodialed No Consent Class)

46.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

47.     Defendant LHIG, either on its own or through its agents or other third parties acting on its behalf (and for their mutual benefit), made unsolicited and unwanted telemarketing calls to cellular telephone numbers belonging to Bond and the other members of the Autodialed No Consent Class—without their prior express written consent—in an effort to generate leads for Defendant's products and services.

48.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

49.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Bond and other members of the

Autodialed No Consent Class simultaneously and without human intervention. Discovery will reveal the technological capacity of Defendant's system.

50.     By making unsolicited telephone calls to Bond and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS while doing so, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

51.     As a result of Defendant's unlawful conduct, Bond and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

52.     Should the Court determine that LHIG's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Bond and the other members of the Class.

### SECOND CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Thompson and the Pre-recorded No Consent Class)**

53.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

54.     Defendant (or a third-party acting on its behalf and for its benefit) made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Thompson and the other members of the Pre-recorded No Consent Class—without their prior express written consent—in an effort to generate leads for Defendant's products and services.

55.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

56.     Defendant made the calls using a pre-recorded voice or similar technology.

57.     By making unsolicited telephone calls to Thompson and members of the Pre-recorded No Consent Class's telephones without prior express consent, and by utilizing an artificial or pre-recorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

58.     As a result of Defendant's unlawful conduct, Thompson and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

59.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Thompson and the other members of the Pre-Recorded No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Bond and Thompson, on behalf of themselves and the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff Joseph Bond and Plaintiff Nicole Thompson as the representatives of the Classes and appointing their counsel as Class Counsel;

B.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

C.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

E.    An injunction requiring Defendant to cease all unsolicited autodialed and pre-recorded calling activities, and otherwise protecting the interests of the Class;

F.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

G.    An award of pre- and post-judgment interest; and

H.    Such other and further relief that the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: March 27, 2020            **JOSEPH BOND and NICOLE THOMPSON**, individually and on behalf of all others similarly situated,


By: _/s/ William McAllum Harrelson II_____
        One of Plaintiffs Attorneys


William McAllum Harrelson, II
HARRELSON & HARRELSON LLP
9 West Water Street
Troy, Ohio 45373
Telephone: (937) 552-9400
Facsimile: (937) 552-9361
Email: Will@HarrelsonLLP.com

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Stephen A. Klein*
sklein@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class