**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **JOSEPH BOND AND NICOLE THOMPSON**, individually and on behalf of all others similarly situated | )<br>)<br>) Case No. 1:20-cv-00677-PAB<br>) |
| Plaintiff, | ) Judge Pamela A. Barker |
| v. | )<br>)<br>**)** |
| **LIGHTHOUSE INSURANCE GROUP, LLC** a Florida limited liability company, | )<br>)<br>) |
| Defendant. | ) |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**I.     INTRODUCTION**

This case presents a textbook class action. Courts across the country have recognized that claims brought under the Telephone Consumer Protection Act (TCPA) are well-suited for class certification. *See Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optical means of forcing corporations to internalize the social costs of their actions.") This case against Defendant Lighthouse Insurance Group, LLC ("Defendant" or "Lighthouse") is no different.

Lighthouse is a company that offers insurance products. In its zeal to gain an advantage in this competitive space, Lighthouse turns to telemarketing. Unfortunately, as Plaintiffs allege, such telemarketing efforts violate the TCPA. As explained below, Lighthouse has violated the TCPA uniformly with respect to the entire Class. Defendant admits: (1) that it placed the calls at issue, (2) that the calls were placed using the same dialing equipment,  (3) that the calls were made for the same purpose, and (4) that it procured supposed prior express consent from the same sources. Thus, common questions abound which can be resolved with a single strike, and

1

this Court should therefore grant certification and provide Plaintiffs with a deadline for proposing a reasonable Notice Plan.

## II. BACKGROUND FACTS

This lawsuit challenges telemarketing phone calls that Lighthouse placed to Plaintiffs and the members of the alleged Class. Through discovery in this case, several key facts have been revealed, including:

- Defendant used a "ViciDial" dialing system to place all of the calls at issue in this case. (*See* "Rule 30(b)(6) Deposition Transcript," attached hereto as Exhibit A, 27:12-16)
- Defendant placed all of the calls at issue in this case for the same purpose—to sell insurance products. (Ex. A, 42:22-25; 43:1-4.)
- Defendant purchased Plaintiffs' leads from two lead generators: All Web Leads and MediaAlpha. (Ex. A, 46:5-24.)
- Defendant called thousands of people during the relevant time period whose lead it purchased from either All Web Leads or MediaAlpha. (Ex. A, 47:2-14.)
- Defendant can locate the phone numbers and lead information it called using its ViciDial system after purchasing the lead from either All Web Leads or MediaAlpha in two ways: (1) by simply asking All Web Leads and MediaAlpha for the list of leads Lighthouse purchased; or (2) by going into its system and pulling a lead list using the unique vendor ID number assigned to All Web Leads and MediaAlpha. (Ex. A, 49: 14-17; 50:1-13; 51:9-21.).

Given such facts, this case is well suited for class treatment. Each factor of Rule 23 is satisfied in this case and with a single strike a factfinder can resolve the key questions in this case across the entire Class—namely, whether Defendant's equipment constitutes an ATDS

under the TCPA and whether Defendant can prove that it secured prior express written consent via All Web Leads and MediaAlpha. Thus, Plaintiffs seek to certify the follow Class:

> All persons in the United States who (1) received a telephone call placed by Defendant, (2) on his, her, or its cellular telephone, (3) from the last four years through the date notice is sent to the Class, (4) for the same purpose as Defendant placed the telephone calls to Plaintiffs, (5) using the same equipment that was used to call the Plaintiffs, and (6) for who Defendant claims it obtained prior express consent to place telephone calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads.

As such, and as set forth more fully below, this is a case that should be certified.

### III. ARGUMENT

Class certification is appropriate where the record shows that all of the enumerated requirements of Rule 23(a) and at least one section of Rule 23(b)(3) can be satisfied. As explained below, that is precisely the case here, and certification should be granted.

> **A. The Class is ascertainable—Class members can be identified through reference to objective criteria, including a combination of Lighthouse's records, records from Lighthouse's lead vendors, and Class member declarations.**

Courts have frequently held that the existence of an ascertainable class is an implied prerequisite to class certification under Rule 23. *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012). However, the Eleventh Circuit has recently held that "administrative feasibility is not a requirement for certification under Rule 23 . . . we limit ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021); *see also Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 674 (N.D. Ga. 2003) ("The class simply must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.") (quotations omitted.)

3

Indeed, "a court need not ascertain 'absent class members' actual identities ... before a class can be certified... rather, it is enough that the class be ascertain*able*'... with class members to be identified during a claims administration process if the class prevails.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (quoting *Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 417 (N.D. Ill. 2012)). Rather, if the court "can ascertain the members of the class by reference to objective criteria, then the class is adequately defined." *Edwards*, 2012 WL 4378219, at *4. A class definition is sufficient if class membership is defined by "objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Objective criteria may include a defendant's business records. *See Cowit v. CitiMortgage, Inc.*, No. 1:12-cv-869, 2013 WL 940466, *3 (S.D. Ohio March 8, 2013).

Applied here, the proposed class is ascertainable. That is, Plaintiffs seeks to certify a Class that consists of the following people:

> All persons in the United States who (1) received a telephone call placed by Defendant, (2) on his, her, or its cellular telephone, (3) from the last four years through the date notice is sent to the Class, (4) for the same purpose as Defendant placed the telephone calls to Plaintiffs, (5) using the same equipment that was used to call the Plaintiffs, and (6) for who Defendant claims it obtained prior express consent to place telephone calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads.

Class membership is based on objective criteria. Whether someone is in the United States and received a phone call from Lighthouse during the relevant time period are all wholly objective inquiries—none has a subjective component. Likewise, whether the calls were placed using the same dialing system used to calls Plaintiffs and whether people consented in supposedly the same way as Plaintiffs did are neither subjective nor difficult to determine. Such information can be readily discernable from Defendant's own records—indeed, as stated above, Defendant's Rule 30(b)(6) designee (its CEO) readily admits that criteria is ascertainable.

4

To the extent there remains any doubt, Class Members can provide records, including affidavits and documents including phone bills, to establish class membership. Indeed, "'It is enough that the class be ascertain*able*' with class members to be identified during a claims administration process if the class prevails." *Birchmeier*, 302 F.R.D. at 245 (*citing Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 417 (N.D. Ill. 2012) ("a court need not ascertain "absent class members' actual identities ... before a class can be certified.") Documentary evidence, together with sworn declarations from class members, can be used to show class membership. *Birchmeier*, 302 F.R.D. 240, 249–50 (N.D. Ill. 2014).[1]

In short, class membership is objectively ascertainable.

**B.     The Class meets each of the requirements of Rule 23(a).**

The Class is numerous, and members share common issues. Further, Plaintiffs have typical claims, and they, along with their counsel, will adequately represent the Class.

### 1.     Defendant admits that the Class sufficiently numerous.

The proposed Class is sufficiently numerous as well so as to satisfy Federal Rule 23(a)(1). Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Celano v. Marriott Int'l, Inc*., 242 F.R.D. 544, 549 (N.D. Cal. 2007) (explaining that, in general, numerosity is satisfied when the class comprises forty or more members). A proponent of certification need not identify the exact number of class members to satisfy numerosity. Newberg on Class Actions § 3:5, 243-46 ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands .

---

[1] Importantly, "a class is not rendered unascertainable merely because an analysis of data is necessary to determine class membership. *See Dunnigan v. Metro. Life Ins. Co.,* 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("[T]he class can be identified through an examination of the individual files of each of the participants. The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement."); *In re TFT–LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 592 (N.D. Cal. 2010).

. . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.")

"[N]o strict numerical test exists," and the exact number of class members need not be pleaded or proved. *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005). Rule 23(a)(1) does not require that joinder be impossible, but only that it be "difficult or inconvenient." *Rumpke v. Rumpke Container Serv., Inc.*, 2205 F.R.D. 204, 207 (S.D. Ohio 2001).

Generally, forty (40) or more members suffices, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007), and classes that number in the thousands "clearly" satisfy the numerosity requirement. *See, e.g., Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (finding numerosity requirement satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes). Precision isn't required, nor is hard data. *See, e.g.*, *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002) (court may use common sense when determining whether joinder is impractical.)

Applied here, the exact number of Class members at issue is unknown at this time. However, common sense dictates that numerosity is satisfied. Indeed, Defendant admits as such. Defendant's Rule 30(b)(6) witness testified that Lighthouse called "thousands" of persons whose leads were purchased from All Web Leads and MediaAlpha. (Ex. A, 47:2-14.) As such, both the evidence and common sense dictate that there are over 40 class members so as to render joinder impracticable in satisfaction of Rule 23(a)(1).

The exact number of Class Members can be determined once a proposed Notice Plan is approved, but regardless numerosity is satisfied here.

> **2. Class members share common issues that drive the resolution of the claims.**

Next, common issues abound in satisfaction of Rule 23(a)(2). These include whether the calls were classed using an automatic telephone dialing system ("ATDS"), whether the calls were placed to encourage the purchase of Lighthouse's products or services, whether Lighthouse had sufficient proof of prior express written consent to place the calls at issue, and whether Lighthouse acted willfully.  All are common issues capable of class wide resolution.

Commonality, requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That is, the claims must "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Under commonality's "permissive" standard, "'factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 640 (D. Colo. 1986) (*quoting Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied,* 460 U.S. 1069 (1983)); *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) ("[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.")

As the Supreme Court explained in *Dukes*, "[w]hat matters to class certification. . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Dukes*, 131 S. Ct. at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)).

A finding of commonality requires only a single question of law or fact common to the entire class.  *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir,

7

2007); *Silbaugh v. Viking Magazine Servs.,* 278 F.R.D. 389, 392 (N.D. Ohio 2012); *Dukes*, 131 S.Ct. at 2545, 2556 ("[E]ven a single common question will do."); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006) ("Rule 23(a)(2) commonality may be met by a single issue of law or fact."). Identical issues aren't required—rather, the common issues must be susceptible to generalized, as opposed to specific, proofs. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

As explained above, several common issues are present in this case for which the litigation will produce common *answers* across the entire class in satisfaction of the commonality. For example, Defendant admits that the calls and texts were placed using ViciDial dialing equipment. Thus, the question of whether such dialing equipment constitutes an ATDS under the TCPA is common across the entire Class. Similarly, Defendant states that it purchased Plaintiffs' lead information from two lead generators, All Web Leads and MediaAlpha, and that prior express consent was secured by those lead generators. Thus, question of whether such alleged consent is a valid defense is common across the entire Class, which is defined to be limited to only persons who Lighthouse called after purchasing the person's lead from those two lead generators. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party").

In short, common questions abound in this case and commonality is satisfied.

### 3. Typicality is met as well

Plaintiffs also satisfy Rule 23(a)(3)'s requirement of typicality. "Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate

representation can be expected." *Colo. Cross-Disability Coal.*, 2012 WL 1378531, at *11-12. Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." 5 NEWBERG ON CLASS ACTIONS, § 24.25 (3d ed. 1992); *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975) ("courts have consistently ruled that even though it appears that the named plaintiffs have not suffered discrimination, this fact does not prevent them from representing the class") (citations omitted)).

Under the Rule's permissive standards, "Plaintiffs need only show, as they have done here, that their interests are compatible and not antagonistic to the interests of the other class members." *Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1248 (D. Colo. 1983); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). That is, "[s]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied." *Kohn v. Am. Hous. Found., Inc.*, 178 F.R.D. 536, 541 (D. Colo. 1998); *see also* 1 Newberg on Class Actions § 3:29 (5th ed.) ("[T]ypicality will be satisfied so long as "the named representatives' claims share the same essential characteristics as the claims of the class at large."); *Joseph*, 109 F.R.D. at 639-40 ("It is to be recognized that there may be varying fact situations among individual members of the class and this is all right as long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory." ) (quoting *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975)).

Hence, "[e]ven though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

9

The test is whether other class members have the same or similar injury and whether the action is based on conduct that is not unique to the named plaintiffs. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "A finding of commonality will ordinarily support a finding of typicality." *Barefield v. Chevron U.S.A., Inc.*, No. 86-CV-2427, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987).

Here, Plaintiffs' claims are typical of those of the other class members. They received the same calls placed by defendant and using the same dialing system that everyone else received after provided supposed consent in the same way. Thus, the claim is that the defendant acted the same way as to all putative class members. *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."). Further, Plaintiffs are a member of the Class. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 437 (W.D. Wash. 2000) (finding typicality for class on claims of breach of contract, stating that "[o]n a very basic and elementary level, [plaintiff] seeks to have the defendants charge him what he believes to be the correct interest rate, and to make sure that they do in the future for both himself and others like him. . . should he be successful, and that is the crux of [the typicality] requirement.").

As such, the Court should find Rule 23(a)(3) satisfied here as well.

### 4. Both Plaintiffs and their counsel are adequate to serve as Class representatives.

The final requirement of Rule 23(a) ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Plaintiffs have stepped forward, put their name out, and done everything asked of them as named plaintiffs. Likewise, proposed Class Counsel have no conflicts either and unquestionably has experience in prosecuting these types of cases. (*See* "Firm Resume of Woodrow & Peluso, LLC," a true and accurate copy of which is attached hereto as Ex. B.)

In the end, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Joseph*, 109 F.R.D. at 640 (quoting 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638–39). "[T]he adequacy requirement mandates that no conflicts of interest exist between the named plaintiffs and the absent class members," *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006), and adequacy is only defeated by actual conflicts. *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979). Here there are no actual conflicts and Rule 23(a)(4) is satisfied.

### C. The Class also meets the requirements of Rule 23(b)(3) as well.

In addition to meeting each of the requirements of Rule 23(a), the record also establishes that certification is appropriate under Rule 23(b)(3). As explained below, the common issues in the case predominate over any individualized issues. Additionally, a class action is superior, and the Class doesn't present any manageability concerns. At the class certification stage, Plaintiff need prove only that Defendant's challenged conduct involves a pattern or practice that has been applied generally to the Classes. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012).

### 1. The common questions identified above cut to the heart of the litigation and predominate over any supposed individualized issues.

11

The record also shows predominance of the common issues. Predominance is similar to commonality but requires a "far more demanding" inquiry than "Rule 23(a)'s commonality requirement." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 724 (N.D. Ill. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 814. (*quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). Individual questions need not be absent, however. (*Id.*) (explaining that the rule requires only that individual questions not predominate over the common questions.) Rather, common questions predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2nd Cir.2006), *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir.2000). *Messner*, 669 F.3d at 814. Ultimately, predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 624.

The common questions identified above predominate over any supposed individualized issues. Each are common issues that cut to the heart of the case that aren't trumped by any individual concerns. Ultimately, even if there were some individual issues, that does not preclude certification so long as the class-wide issues "are more substantial than the issues subject to only individualized proof." *Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *8-9 (D. Colo. May 28, 2013). That is the case here. The main issues in this case are well suited for class treatment. As such, the Court should find Rule 23(b)(3) predominance met as well.

### 2. A Class action here is plainly manageable and superior to any other supposed methods of adjudicating the controversy.

As a final consideration, the Court should also find that a class action would be both manageable and superior. Rule 23(b)(3) further requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Matters pertinent to this inquiry include:

1. (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and; (D) the likely difficulties in managing a class action."

*Id*. Applied to the instant facts, no class members have any interest in individually controlling the prosecution of separate actions. The costs simply outweigh the benefits of individual litigation. Indeed, the "class action device is frequently superior where proceeding individually would be difficult for class members with small claims." *Belote*, 2013 WL 2317243 (citing *Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir. 2010).

In this case, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quotation omitted); *Agne*, 286 F.R.D. at 571-72 (addressing Rule 23(b)(3) factors in a similar TCPA case and finding class treatment superior to individual actions); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 54-55 (D. Conn. 2000) (rejecting argument that individual actions would better serve class members in a TCPA claim). Finally, a class wouldn't be unmanageable.

13

## IV. CONCLUSION

The proposed Class is worthy of certification here. The Class is defined with reference to solely objective criteria, is numerous, and its members share common legal and factual issues. Plaintiffs are typical and both they and their counsel will adequately protect the Class Members' interests. Finally, the common issues predominate and a class action is superior and manageable. As such, this Court should grant class certification and award such additional relief as the Court deems necessary, reasonable, and just.

      \*      \*      \*      \*      \*      \*

Respectfully Submitted,

**PLAINTIFFS**, individually and on behalf of all others similarly situated,

Dated: August 18, 2021        /s/    Patrick H. Peluso

One of Plaintiff's Attorneys

Patrick H. Peluso\*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
(720) 213-0675

*\*Pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers using the Court's electronic filing system on August 18, 2021.

                                            */s/ Patrick H. Peluso*