IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOSEPH BOND AND NICOLE THOMPSON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  CASE NO. 1:20-cv-00677  JUDGE PAMELA A. BARKER   **DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| Plaintiffs, | |
| v. | |
| LIGHTHOUSE INSURANCE GROUP, LLC, | |
| Defendant. | |

### INTRODUCTION

Plaintiffs Joseph Bond's and Nicole Thompson's (collectively, "Plaintiffs") Motion for Class Certification (the "Motion") does not, among other things, provide for an objectively ascertainable class. For that reason, as well as the reasons set forth in more detail below, Defendant Lighthouse Insurance Group, LLC ("LIG") respectfully requests that the Court deny Plaintiff's Motion.

### BACKGROUND AND FACTS

The facts of this case are very straightforward. Plaintiffs have brought claims against LIG for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq* ("TCPA"), based on allegations that:

(1) Bond, on three occasions back in 2017, received calls from LIG which *he believes* to have been autodialed calls, and for which he believes he never provided consent to LIG; and

(2) Thompson, on four occasions back in 2020, received calls from LIG which *she believes* featured a "pre-recorded voice", and for which she believes she never provided consent to LIG.

(*See generally* Complaint ("Cmplt").)

Plaintiffs list a litany of damages allegedly incurred by the *handful of short calls* they received from LIG, including aggravation, nuisance and invasions of privacy, wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, and diminished use, enjoyment, value, and utility of their telephone plans. (*See* Cmplt. ¶¶37, 51-52, 58-59.) However, as this case has progressed through depositions of all named parties, Plaintiffs' allegations have remained just that—allegations, with no evidence to back up their assertions of autodialed or pre-recorded calls made by LIG to them or others, and no evidence to support their assertions of lack of consent on their behalf or on behalf of others regarding any call LIG has made.

In fact, LIG's Rule 36(b)(6) corporate representative, Jason Farro, who was deposed on July 8, 2021, explained in detail LIG's process for obtaining leads through vendors. He explained that LIG only makes calls to individuals who consent to be contacted by LIG regarding inquiries into its insurance products via those leads LIG purchases through its vendors: "We do not just randomly call individuals. People consent to be called when we purchase that lead, and we have agreements with the lead vendors, and they request to be contacted by an agent to sell insurance products…Again, we would buy a lead from All Web or MediaAlpha with consent and dial those leads to -- to inform them about the insurance products that are available for -- for those individuals."" (Deposition of Jason Farro ("Farro Dep.")[1] 42:12-17, 46:20-24.) Counsel for Plaintiffs continuously asked Mr. Farro about consent, and every time, his answer remained the same—that LIG does not contact anyone via leads without their consent. (*See Id*. at 62:1-3, 64:17-25, 65:1-5.)

---

[1] All referenced portions of Mr. Farro's Deposition are attached hereto as Exhibit A.

2

At no point in this case has any evidence been presented substantiating Plaintiffs' claims that they did not consent to LIG's calls, or that LIG utilized auto-dial or pre-recorded call methods when contacting Plaintiffs, or anyone else in Plaintiffs' proposed class.

As to Plaintiffs' proposed class, Plaintiffs' Complaint defines its alleged *classes* as follows:

> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's cellular telephone; (3) using the same equipment that was used to call the Bond; (4) for the purpose of selling LHIG's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Bond.
>
> **Pre-recorded No Consent Class**: All persons in the United States who (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's telephone; (3) for the purpose of selling Defendant's products and services; (4) using the same pre-recorded voice technology that was used to call Thompson; and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call Thompson.

(Cmplt. ¶39.)

However, this is not the same class proposed in Plaintiffs' Motion. Instead, Plaintiffs' Motion proposes one, single, generalized, class, even though Bond and Thompson bring two separate claims in their Complaint, based on two very different theories and facts (auto-dial v. pre-recorded calls). (*See* Motion p. 4.) Because of this, among other reasons that will be explained in more detail below, Plaintiffs' Motion fails to meet the standard set for by Federal Rule of Civil Procedure 23 and by law. As such, Plaintiffs' Motion should be denied.

## LAW AND ARGUMENT

"In reviewing a motion for class certification, the Court must first identify the purported 'class' and determine that the named plaintiffs are members of the class." *Meznarich v. Morgan Waldron Ins. Mgmt., LLC*, 2011 U.S. Dist. LEXIS 113237, *8-9 (N.D. Ohio 2011). "The class

definition must specify 'a *particular group* at a *particular time frame* and location who were harmed in a *particular way'* and define the class so that its membership can be *objectively ascertained*." *Id*. (emphasis added), quoting *Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000). "The court should not certify a class unless the class description is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Solo v. Bausch & Lomb Inc.*, 2009 U.S. Dist. LEXIS 115029, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Proc. § 1760 (3d ed. 2005)).

Here, the proposed class description is not "sufficiently definite".

**A.    The Proposed Class is Not Objectively Ascertainable.**

Unlike their Compliant, Plaintiffs' Motion proposes to certify the following, single, generalized class based off both of Plaintiffs' claims:

> All persons in the United States who (1) received a telephone call placed by Defendant, (2) on his, her, or its cellular telephone, (3) from the last four years through the date notice is sent to the Class, (4) for the same purpose as Defendant placed the telephone calls to Plaintiffs, (5) using the same equipment that was used to call the Plaintiffs, and (6) for who Defendant claims it obtained prior express consent to place telephonic calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads.

(Motion p. 4.)

This proposed class is not objectively ascertainable. Firstly, proposed class members cannot be identified without extensive factual and individualized inquiries. As LIG testified to, but Plaintiff conveniently left out of their Motion, LIG cannot readily pull information from unknown leads that were dialed, as that information is housed with their lead vendors, MediaAlpha and All Web Leads. If LIG specifically knows which individual they are looking for, they may search for lead information, but given the scope of Plaintiffs' proposed class, it would be highly unduly

4

burdensome, and next to impossible, for LIG to search for relevant lead information. (Farro Dep. pp. 49-53); *see e.g. Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593, 2012 U.S. App. LEXIS 16369, *17 (3rd Cir. 2012)("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").

Furthermore, Courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, as is the case here, the class definition fails. *See e.g. Clavell v. Midland Funding LLC*, No. 10-3593, 2011 U.S. Dist. LEXIS 65721, 2011 WL 2462046, at *4 (E.D. Pa. June 21, 2011); *Sadler v. Midland Credit Mgmt, Inc.*, No.06-C-5045, 2008 U.S. Dist. LEXIS 51198, 2008 WL 2692274, at *5 (N.D. Ill. July 3, 2008); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. C 06-2069 SBA, 2008 U.S. Dist. LEXIS 14756, 2008 WL 413749, at *8 (N.D. Cal. Feb. 13, 2008); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 U.S. Dist. LEXIS 53188, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007). In *Karhu v. Vital Pharms., Inc.*, the Eleventh Circuit held that a plaintiff "cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; **the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible**." 621 F. App'x 945, 948 (11th Cir. 2015)(emphasis added)(affirming denial of class certification where plaintiff presented only bare proposal that court could ascertain class members through defendant's sales data and also had failed to timely raise alternative method of ascertainability). Here, Plaintiffs have failed to show that LIG's records are useful for identification purposes, and that identification will be feasible. In fact, as stated previously, the evidence demonstrates the opposite. (*See* Farro Dep. pp. 49-53.)

Moreover, the proposed class definition contains vague and subjective language that

5

prevents the Court from objectively determining class membership. Specifically, bullet point six, which states, "for who Defendant *claims* it obtained prior express consent to place telephonic calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads," introduces subjective criterion into what should *only* be an objective evaluation. *See Chiang v. Veneman*, 385 F.3d 256, 271, 46 V.I. 679 (3rd Cir. 2004) (holding that "defining a class by reference to those who 'believe' they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation"), abrog. on other grounds by *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 318 n.18. (3rd Cir. 2008).

Furthermore, LIG has already testified that it does not place calls to *any* individuals without their prior consent. (*See* Farro Dep. 42:12-17; *see also* 46:20-24, 62:1-3, 64:17-25, 65:1-5.) Therefore, bullet point six does not work to limit the proposed class in any way, especially considering that the class definition starts off with "all persons…who (1) received a telephone call placed by Defendant". *See e.g. Gannon v. Network Tel. Services, Inc.*, No. 12-9777-RGK, 2013 U.S. Dist. LEXIS 81250, 2013 WL 2450199, at *2-3 (C.D. Cal. June 5, 2013)(finding in a situation where some of the putative class members may have provided consent to text messages that the proposed TCPA class was 'unascertainable and unidentifiable' because the class definition would require individualized inquiry into whether the class members consented); *see also Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235-35 (S.D. Ill. 2011)(finding in TCPA case that class was not sufficiently defined and was overbroad where plaintiff sought to certify a class that included "a substantial number of people who voluntarily gave their telephone numbers" to the defendant, and determining who would be in a class narrowed to an appropriate size could not be done by reference to objective criteria applied class-wide and would be an "unmanageable task".)

Lastly, bullet point three, "from the last four years through the date notice is sent to the Class" fails to identify a *particular time frame* as required by law. *See McCormick*, 196 F.R.D. at 491. It is unclear when the calculation of "last four years" begins, and why the "last four years" was the time frame chosen. As such, this proposed time frame is vague, ambiguous, overbroad, and unascertainable. *See e.g. Groussman v. Motorola, Inc.*, 2011 U.S. Dist. LEXIS 134769, *20-21 (N.D. Ill. 2011)("There are no facts in the record that indicate that the proposed beginning and ending dates of the class period are anything other than arbitrarily chosen dates…Thus, the class is overly broad and vaguely defined…Plaintiffs, as movants, had the burden to delineate an appropriate proposed class definition and have failed to do so. Therefore, the failure of Plaintiffs to delineate an appropriate class is another basis to deny the instant motion for class certification."); *Deitz*, 2007 U.S. Dist. LEXIS at *25 ("The problem of ascertainability is the inability for future courts to ascertain who was and was not bound by the judgment. If the class definition depends on criteria that are not readily ascertainable, it would be nearly impossible to determine who was actually included an appropriate class member.").

Because the proposed class is not objectively ascertainable, this Court should deny Plaintiffs' Motion. Since the class description is not sufficiently definite, a review of the Rule 23(a) requirements is not even necessary. However, even if this Court did find that the proposed class was readily ascertainable, the proposed class does not meet all of the requirements of Federal Rule of Civil Procedure 23(a).

**B.      Plaintiffs Do Not Meet the Requirements of Federal Rule of Civil Procedure 23(a).**

If "a class has been identified, Plaintiffs must establish that the requirements of Rule 23(a) are met." *Meznarich*, 2011 U.S. Dist. LEXIS at *9. "**The proposed class representative bears the burden to establish that each of these four requirements are satisfied with respect to the**

7

**proposed class**." *Id*., citing *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003)(emphasis added); *Kutschbach v. Davies*, 885 F. Supp. 1079, 1083 (S.D. Ohio 1995). Rule 23(a) lists four requirements for the certification of a class, which are as follows:

> 1. Numerosity: the members of the class must be so numerous that joinder of all members is impracticable;
>
> 2. Commonality: questions of law or fact must be common to the entire class;
>
> 3. Typicality: the claims or defenses of the named representative must be typical of the claims or defenses of the class; and
>
> 4. Adequacy: the named representative must fairly and adequately represent the interests of the class as a whole.

*Meznarich*, 2011 U.S. Dist. LEXIS at *9; *see* Fed. R. Civ. P. 23.

"The Court **is required to conduct a 'rigorous analysis'** into whether the requirements of Rule 23 are met before certifying a class." *Meznarich*, 2011 U.S. Dist. LEXIS at *9-10 (emphasis added), quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). "The Court cannot find an action is maintainable as a class action merely because it is designated as such in the pleadings." *Id*. at *10. Rather, "[t]here must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). The Court "must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of the plaintiffs' proofs are principally *individual* in nature or are susceptible of common proof equally applicable to all class members." *Little Caesar Enters. v. Smith*, 172 F.R.D. 236, 241(E.D. Mich. 1997) (emphasis in original).

    **1.    Numerosity is Not Met Here.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining

8

impracticability of joinder." *Visser v. Caribbean Cruise Line, Inc.*, 2020 U.S. Dist. LEXIS 12666, *11 (W.D. Mich. 2020), quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. Nonetheless, while "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, **and cannot be speculative**." *Golden v. City of Columbus*, 404 F.3d 950. 966 (6th Cir. 2005) (quoting *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001)).

Plaintiffs simply contend, without more, that because Mr. Farro "testified that [LIG] called 'thousands' of persons whose leads were purchased from All Web Leads and MediaAlpha", that "evidence and common sense dictate that there are over 40 class members so as to render joinder impracticable in satisfaction of Rule 23(a)(1)." (Mot. p. 6.) However, neither the law nor the evidence supports this conclusion. Moreover, "numerosity . . . is inextricably bound up in the question of class definition." *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 294, 2008 U.S. Dist. LEXIS 22651, *21 (W.D. Ky. 2009), quoting *Paulley v. Chandler*, 2000 U.S. Dist. LEXIS 21690, 2000 WL 33975579 *1 (W.D. Ky. 2000). "[C]ourts faced with overbroad proposed classes have rejected plaintiffs' numerosity arguments on these grounds." *Burkhead*, 2008 U.S. Dist. LEXIS at *21; *see also Brockman v. Barton Brands, Ltd.*, 2007 U.S. Dist. LEXIS 86732, *18 (W.D. Ky. 2007)(also stating that, "courts faced with overbroad proposed classes have rejected plaintiffs' numerosity arguments on these grounds.")

Plaintiffs have only been able to point to themselves as potential parties allegedly harmed by LIG, and have failed to point to *even one other individual* who received a call like the ones Bond or Thompson allege they received. (*See* Deposition of Joseph Bond ("Bond Depo." pp. 15-16, 18, 20-23.)[2] It is important to note that although Plaintiffs' Motion couches its proposed class

---

[2] All referenced portions of Mr. Bond's Deposition are attached hereto as Exhibit B.

9

into one overbroad and generalized grouping, **Plaintiffs' claims are based on <u>two very distinct set of facts</u>**: Bond alleges that LIG violated the TCPA by making *auto-dialed* calls to Bond that he allegedly did not consent to, while Thompson alleges that LIG violated the TCPA by making *pre-recorded* calls to Thompson that she allegedly did not consent to. *See generally* Complaint; *see also Scott v. University of Delaware*, 601 F.2d 76, 89, 1979 U.S. App. LEXIS 14202, *34-35 (3rd Cir. 1979)("the numerosity requirement for class certification was not satisfied with respect to the faculty subclass" where plaintiff "has not identified a single past or present faculty member, other than himself, who was arguably discriminated against by the University's contract renewal, promotion, and tenure practices.").

**Although they attempt to group their claims together in one proposed class, neither Plaintiff has identified one person other than themselves who was allegedly harmed by LIG in the same manners in which they each, separately, allege they were harmed.** The two matters in dispute here are clearly principally individual to each Plaintiff, and should therefore not be the basis of class certification.

This Court should decline Plaintiffs' Motion as the Sixth Circuit did in *Visser v. Caribbean Cruise Line, Inc*., 2020 U.S. Dist. LEXIS at *14. In *Visser*, Plaintiff contended that the class included thousands of people to whom "'robocall messages were delivered, listened to by the called party, transferred to employees at Defendant['s] call centers and resulted in presentations being made to people who had been called.'" *Id*. at *11.

> In support of this number, Visser points to an exhibit which indicates that CCL received 92,378 calls through the 8866 number in the time period from February 25 to September 3, 2013. However, the only thing this exhibit demonstrates is that Vatara transferred a large number of calls to CCL. It does not indicate anything about who initiated the calls (i.e., Vatara or the customer), the content of those calls, or the identity of the putative class member on the other side of the call. It also does not indicate whether the caller used an auto-dialer or a recorded message, or failed to state his/her name at the beginning of a sales call.

10

*Id*. at *11-12 (internal citations omitted). In *Visser*, this was "**Plaintiff's only evidence in support of numerosity, but it fails to show that anyone else received a call like the one that Visser received**." *Id*.

This is the case here as well, where Plaintiffs' only evidence that any other class member supposedly received an auto-dial or pre-recorded *is their own belief that that may have happened* based on the fact that LIG bought thousands of leads, and *potentially* made calls to those leads. As such, Plaintiffs' proposed class fails the numerosity requirement of Rule 23(a).

2. **Commonality is Not Met Here.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). Both Bond's and Thompson's claims and allegations boil down to one factual issue to which both hinge: whether or not they consented to being contacted by LIG. However, Plaintiffs ignore the fact that the Sixth Circuit has held that "**questions of consent present individualized issues <u>counseling against class certification</u>**." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467, 2017 U.S. App. LEXIS 12353, *15, 2017 FED App. 0144P (6th Cir. 2017)(emphases added)("Not only was the district court correct to identify consent as presenting individualized questions, such questions were sufficient to keep common questions from predominating and preclude certification under Rule 23(b)(3).").

While "Plaintiffs need not prove that every element can be established by classwide proof…**the key is to 'identify the substantive issues that will control the outcome**,' in other words, courts should 'consider how a trial on the merits would be conducted if a class were certified.'" *ASD Specialty Healthcare, Inc.*, 863 F.3d at 468 (emphasis added), quoting *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quotation marks omitted).

Plaintiffs further ignore the fact that LIG *consistently* testified to the fact that it only dials

11

individuals via leads purchased from lead vendors, All Web Leads and MediaAlpha, wherein individuals <u>have provided their express consent</u> to be contacted. (*See* Farro Dep. 42:12-17; *see also* 46:20-24, 62:1-3, 64:17-25, 65:1-5.) From approximately 2016 through the date the Complaint was filed by Plaintiffs in this case, LIG purchased thousands of leads from All Web Leads and MediaAlpha. (*See* Farr Dep. 47.) Moreover, LIG testified that it has already provided Plaintiffs with copies of their consent to be contacted by LIG via these leads. (*See* Farro Dep. 40:23-25, 41:1.)

In *Specialty Healthcare*, the defendant purchased a list of physician contact information from a third-party provider and sent faxes to over 40,000 recipients. 863 F.3d at 464-65. Some of the physicians on the list also happened to be current or former customers. *Id*. The defendant produced evidence that "several thousand" receptions were current or former customers. *Id*. at 468. "This evidence consisted of . . . various forms where customers had provided [the defendant] with their fax numbers." *Id*. The court found that *individual questions predominated* because:

> the district court would be tasked with filtering out those members to whom [the defendant] was not liable—those individuals who solicited the . . . fax. Regardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation . . . Thus, the predominant issue of fact is undoubtedly one of *individual* consent.

*Specialty Healthcare*, 863 F.3d at 469 (emphasis in original).

As was the case with the customers in *Specialty Healthcare*, thousands of individuals have provided their telephone numbers to All Web Leads and MediaAlpha when requesting information from LIG. *See ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468; *see also Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6, 13, 2018 U.S. Dist. LEXIS 182507, *14 (Mass. D.C. 2018)("[t]housands of high schools have provided their facsimile numbers to ACT when requesting information" from Defendant.");(Farro Dep. 47). The issue of consent here is

12

undoubtedly the driver of the claims in this litigation.

Because Plaintiffs present zero evidence that consent was lacking for themselves, let alone any other proposed member of the class, and because consent itself is the driving force behind all claims in this litigation, commonality is not met here.

### 3. Typicality is Not Met Here.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs simply assert, without evidence, that "[other proposed class members] received the same calls placed by [LIG] and using the same dialing system that everyone else received after provided supposed consent in the same way." *See* Motion p. 10; *Visser*, 2020 U.S. Dist. LEXIS at *14 ("Plaintiff simply asserts, without evidence, that '[e]ach [c]lass member received the same pre-recorded phone call.'"). However, Plaintiffs have provided no evidence whatsoever to back up any of those assertions. (*See generally*, Motion.) Thus, "[a]t this point, without more evidence of the existence of other class members, or of a uniform course of conduct by the entity that apparently initiated the calls at issue…the Court cannot conclude that Plaintiff can satisfy other prerequisites for bringing a class action, such as typicality and predominance." *Visser*, 2020 U.S. Dist. LEXIS at *14. This is because "the Court cannot discern whether issues subject to generalized proof applicable to the class would predominate over issues subject to individualized proof," much like the consent issue previously discussed. *Id*. (finding Plaintiff did not meet his burden for class certification).

Consequently, Plaintiffs have not met their burden of proving all of the requirements for class certification, including typicality.

### 4. Adequacy is Not Met Here.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

13

interests of the class. " *See* Fed. R. Civ. P. 23(a)(4). To fulfill this requirement, the plaintiff must show that: (1) the class representative has common interests with the rest of the class; and (2) the class representative will vigorously prosecute the interests of the class through qualified counsel. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007). The common-interest criterion requires that there be no antagonism or conflict of interest between the class representative and the other members of the class. *Meznarich*, 2011 U.S. Dist. LEXIS at *20, citing *In re Am. Med. Sys.*, 75 F.3d at 1083.

Although the proposed class here is difficult to determine, it is highly unlikely that Plaintiffs would share a common interest with any proposed class member due to the fact that LIG has already testified that it obtains all of its leads through vendors and all of those leads consist of individuals who have provided *express consent to be contacted*." (Farro Dep. 42:12-17; *see also* 46:20-24, 62:1-3, 64:17-25, 65:1-5.) Moreover, LIG has already testified that it does not utilize auto-dial OR pre-recorded call methods for any of its calls, so it is unclear who would have any common interest to Plaintiffs' claims. (*See* Farro Dep. pp. 74-77; pp. 53-56.) This is especially true considering that to date, Plaintiffs have failed to provide any evidence, besides their own vague assertions, to substantiate *their own* claims.

Plaintiffs had to satisfy *all* elements of Rule 23(a) to meet their burden for class certification, which they have not. Class certification is therefore inappropriate in this case.

**C.     The Proposed Class Does Not Meet the Requirements Set Forth in Rule 23(b)(3).**

"For Rule 23(b)(3) to authorize class certification, Plaintiffs must show that 'the questions of law or fact common to class members predominate[,]' and that a class action is the 'superior' method for 'fairly and efficiently adjudicating the controversy.'" *Eaton v. Ascent Res. - Utica, LLC*, 2021 U.S. Dist. LEXIS 145585, *16 (S.D. Ohio 2021), quoting Fed. R. Civ. P. 23(b)(3).

14

"Implied in addition, Plaintiff's must show that the class description is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id*. at *16-17, quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)(the ascertainability requirement).

Therefore, for all of the reasons already set forth above as to why Plaintiffs' class description is unascertainable, and why their claims are principally individual to each named Plaintiff, Plaintiffs' Motion does not satisfy the requirements of Rule 23(b)(3).

## CONCLUSION

Based on the foregoing, LIG respectfully requests that the Court deny Plaintiffs' Motion for Class Certification in its entirety.

Dated October 15, 2021                                      Respectfully submitted,

/s/ *Christopher B. Congeni*
Christopher B. Congeni (0078160)
Douglas G. Walters (0093804)
Annamarie E. Braga (0097775)
MATASAR JACOBS LLC
1111 Superior Avenue, Suite 1355
Cleveland, OH 44114
Phone: (216) 453-8180
Fax: (216) 282-8600
ccongeni@matasarjacobs.com
dwalters@matasarjacobs.com
abraga@matasarjacobs.com

Matthew R. Duncan (0076420)
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, Ohio 44308
Phone: (330) 253-5060
Fax: (330) 253-9160
mrduncan@bmdllc.com

*Counsel for Defendant*
*Lighthouse Insurance Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, the foregoing document was filed electronically using the Court's electronic filing system. I certify that all participants in the case are registered ECF users and that service will be accomplished by the ECF system.

/s/ *Christopher B. Congeni*
Counsel for Defendant
Lighthouse Insurance Group, LLC