**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **JOSEPH BOND AND NICOLE THOMPSON**, individually and on behalf of all others similarly situated | )<br>)<br>) Case No. 1:20-cv-00677-JPC |
| Plaintiff, | ) Judge J. Philip Calabrese |
| v. | ) |
| **LIGHTHOUSE INSURANCE GROUP, LLC** a Florida limited liability company, | ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**I.    INTRODUCTION**

In responding to Plaintiffs Joseph Bond's ("Bond") and Nicole Thompson's ("Thompson") (collectively "Plaintiffs") Motion for Class Certification, Defendant Lighthouse Insurance Group, LLC ("Defendant" or "Lighthouse") puts the cart before the horse by attempting to argue the merits of its consent defense and by requesting that Plaintiffs provide evidence that could only be obtained from Defendant itself. In effect, Lighthouse asks the Court to deny certification in the absence of a class list—information that would be required *following* class certification to effectuate notice to the class. But as explained in the motion, Lighthouse has admitted that: (1) it placed the calls to Plaintiffs and thousands of other consumers; (2) the calls were placed using the same dialing equipment; (3) the calls were made for the same purpose; and (4) Lighthouse procured its supposed prior express consent from the same sources. These facts present common questions that can be resolved with a single stroke, and they support class certification under Rule 23. The Court should grant Plaintiffs' motion and provide a deadline for the proposal of a reasonable Notice Plan.

1

## II. BACKGROUND FACTS

As provided in the Motion, the facts supporting class certification can be found in the testimony of Lighthouse's 30(b)(6) representative, CEO Jason Farro. On behalf of Lighthouse, Farro testified to the following:

- Defendant used a "ViciDial" dialing system to place all of the calls at issue in this case. (*See* Farro Deposition Excerpts, attached hereto as Exhibit A, 27:12–16, 68:7–18.)

- Defendant placed all of the calls at issue in this case for the same purpose—to sell insurance products. (Ex. A, 42:22–43:4.)

- Defendant purchased Plaintiffs' leads from two lead generators: All Web Leads and MediaAlpha. (Ex. A, 46:5–24.)

- Defendant called thousands of people during the relevant time period whose lead it purchased from either All Web Leads or MediaAlpha. (Ex. A, 47:2–14.)

- Defendant can locate the phone numbers and lead information it called using its ViciDial system after purchasing the lead from either All Web Leads or MediaAlpha in two ways: (1) by simply asking All Web Leads and MediaAlpha for the list of leads Lighthouse purchased; or (2) by going into its system and pulling a lead list using the unique vendor ID number assigned to All Web Leads and MediaAlpha. (Ex. A, 49:2–50:13; 51:9–21.).

These facts demonstrate that this matter is well-suited for class treatment, as each factor of Rule 23 is satisfied and the key questions in this case—specifically, whether Defendant's equipment constitutes an automatic telephone dialing system ("ATDS") under the TCPA and whether Defendant can prove that it secured prior express written consent via All Web Leads and MediaAlpha—can be resolved in a single stroke for the entire class. Accordingly, Plaintiffs seek to certify the follow Class:

2

> All persons in the United States who (1) received a telephone call placed by Defendant, (2) on his, her, or its cellular telephone, (3) from the last four years through the date notice is sent to the Class, (4) for the same purpose as Defendant placed the telephone calls to Plaintiffs, (5) using the same equipment that was used to call the Plaintiffs, and (6) for who Defendant claims it obtained prior express consent to place telephone calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads.

As outlined in the Motion, and as explained below, certification should be granted.

### III. ARGUMENT

Defendant's arguments in opposition to class certification fall flat. First, Lighthouse's attempts to litigate the merits of its consent defense at the certification stage is inappropriate. Second, Defendant fails to, and indeed cannot, credibly contest its own admissions that reveal the suitability of this case for class-wide resolution. Because the facts in this case support each of the requirements for certification under Rule 23, the Court should certify the class.

### A. Defendant's Consent Arguments Are Not Suited For This Motion—Class Certification Proceedings Are Not An Invitation For Free-Ranging Merits Inquiries.

As a preliminary matter, and before responding to Defendant's arguments as to class certification and the requirements of Rule 23, Plaintiffs will address the arguments made throughout the response brief in which Lighthouse champions the strength of its consent defense. Consent is a critical facet of the merits analysis under the TCPA, and it is an affirmative defense for which Defendant bears the burden of proof—the time to determine the sufficiency of Lighthouse's consent defense is not on a motion for class certification, and the Court should disregard these arguments as they are not relevant to the determination under Rule 23.

Class certification is appropriate where the court finds, after rigorous analysis, that the requirements of Rule 23 have been met. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). While this analysis may involve some overlap

3

with proof required to establish the merits of a case, the Supreme Court has recognized the limited scope of a Rule 23 analysis for certification purposes:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen*); *In re Whirlpool*, 722 F.3d at 851 (same). Put another way, a district court "may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Id.* at 851–52 (6th Cir. 2013) (quoting *Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012)).

In its response to the motion for class certification, Lighthouse attempts to prove the strength of its consent defense. Consent, or rather the absence of consent, is a critical component of a TCPA claim—telemarketers are not permitted to place autodialed or prerecorded calls without "prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2)–(3). Consent is not an element of the plaintiff's prima facie case, but "an affirmative defense for which the defendant bears the burden of proof." *Shelton v. Direct Energy, L.P.*, No. 1:19CV0081, 2019 WL 4194179, at *5 (N.D. Ohio Aug. 27, 2019); *Rodriguez v. Premier Bankcard, LLC*, No. 3:16CV2541, 2018 WL 4184742, at *3 (N.D. Ohio Aug. 31, 2018). Though the Court will ultimately be asked to consider Defendant's consent defense, a motion for class certification is neither the time nor the place for such an inquiry.

As the Supreme Court held, district courts may consider merit questions in a Rule 23 analysis "only to the extent" they are relevant to the Rule 23 prerequisites analysis. *Amgen*, 568 U.S. at 466. Thus, Lighthouse's limited contention that consent is an individualized issue undermining commonality or predominance—which is factually incorrect and refuted below—is

4

appropriately considered in response to a motion under Rule 23. (*See* Response, Dkt. 31 at 11.) On the other hand, Defendant's repeated assertions that it does not place calls without consent, or that there isn't evidence "substantiating Plaintiffs' claims that they did not consent," are not suitable at this stage. (*Id.* at 2, 3, 6, 11–13, 14.)

Leaving aside that consent is an affirmative defense that Defendant must prove, the Supreme Court and the Sixth Circuit have held that the present motion is not to be used as a dress rehearsal for the merits of the claims or defenses—Lighthouse seeks to engage in free-ranging merits inquiries, beyond the limited scope of a Rule 23 analysis. The Court should reject Defendant's invitation to improperly expand these proceedings and disregard Lighthouse's merits arguments regarding consent to the extent they are not presently relevant.

**B.     The Class Is Ascertainable Through Reference To Objective Criteria.**

As outlined in the motion, the class that Plaintiffs seek to certify is ascertainable—members can be identified through reference to objective criteria. Each of Defendant's arguments to the contrary misunderstands the ascertainability requirement and otherwise glosses over Lighthouse's *own admissions* during the 30(b)(6) definition that support ascertainability.

Often treated as an implied prerequisite to Rule 23 certification, ascertainability requires a class to be "adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). "[A] court need not ascertain 'absent class members' actual identities ... before a class can be certified... rather, it is enough that the class be ascertain*able*'... with class members to be identified during a claims administration process if the class prevails.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (quoting *Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 417 (N.D. Ill. 2012)). In other words, if the court "can ascertain the members of the class by

5

reference to objective criteria, then the class is adequately defined." *Edwards*, 2012 WL 4378219, at *4; *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Objective criteria may include a defendant's business records. *See Cowit v. CitiMortgage, Inc.*, No. 1:12-cv-869, 2013 WL 940466, *3 (S.D. Ohio March 8, 2013).

> Here, Plaintiffs seek to certify an objectively ascertainable class:
>
> All persons in the United States who (1) received a telephone call placed by Defendant, (2) on his, her, or its cellular telephone, (3) from the last four years through the date notice is sent to the Class, (4) for the same purpose as Defendant placed the telephone calls to Plaintiffs, (5) using the same equipment that was used to call the Plaintiffs, and (6) for who Defendant claims it obtained prior express consent to place telephone calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads.

Lighthouse has testified to the following: (1) Lighthouse used one dialing system to make all the calls (Ex. A at 27:12–16, 68:7–18); (2) the calls were all made for the same purpose (*id.* at 42:22–43:4); and (3) all leads were purchased from either MediaAlpha or All Web Leads. (*Id.* at 47:2–14.) Further, Defendant's CEO stated that a list of consumers who were called can be obtained in at least two ways. (*Id.* at 49:2–50:13; 51:9–21.) Following the production of a list, potential class members can provide records or declarations to verify membership. Documentary evidence, together with sworn declarations from class members, can be used to show class membership. *Birchmeier*, 302 F.R.D. 240, 249–50 (N.D. Ill. 2014).

Defendant now claims it would be "highly unduly burdensome, and next to impossible" to produce relevant records. But its CEO testified that pulling a list of leads called would be possible, albeit "time consuming." (Ex. A at 49:2–50:5, 51:9–21.) He further stated that "it would be easier to go back to the lead vendor to have them send us the file." (*Id.* at 49:14–17.) These statements plainly contradict Defendant's contention of impossibility. The mere fact that pulling or reviewing records may require time and effort does not defeat ascertainability. *See, e.g.*, *Eaton v. Ascent Res. - Utica, LLC*, No. 2:19-CV-3412, 2021 WL 3398975, at *8 (S.D. Ohio

6

Aug. 4, 2021) ("Though a records review may be time consuming, that does not make the inquiry any less objective."); *see also Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("[T]he class can be identified through an examination of the individual files of each of the participants. The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement."). Membership can be ascertained through record review, and Lighthouse can produce or request the necessary records.

Lighthouse also tries to argue that the language "for who Defendant claims it obtained prior express consent to place telephone calls by purchasing a lead containing the person's phone number from either MediaAlpha or All Web Leads" introduces subjective criteria. (Dkt. 31 at 5–6.) But this language recognizes Defendant's own contention—repeated throughout its response—that it supposedly obtained consent as a result of purchasing its leads from those two vendors. (*See id.* at 2) ("People consent to be called when we purchase that lead . . . we would buy a lead from All Web or MediaAlpha with consent and dial those leads."). This does not require any subjective inquiry; it reflects Defendant's own claim that any consent supposedly possessed by its lead generators was adequate—a claim that is not appropriately raised in this motion but will be tested as a merits question.

Finally, Defendant suggests that the specified time period in the proposed class is "vague, ambiguous, overbroad, and unascertainable." (Dkt. 31 at 7.) The specified time frame—"from the last four years through the date notice is sent to the Class"—is a function of the four-year statute of limitations applicable to TCPA claims. *Siding & Insulation Co. v. Alco Vending, Inc.*, No. 1:11-CV-1060, 2017 WL 3686552, at *11 (N.D. Ohio Aug. 25, 2017) ("The federal four-year 'catch-all' statute of limitations in 28 U.S.C. § 1658(a) applies to claims under the TCPA."). Thus, class members include any consumers called from exactly four years prior to the filing of

7

the complaint (March 30, 2016) to the date notice is sent to the class. This parameter is neither vague nor unascertainable; it includes all consumers harmed in the same manner as the Plaintiffs within the boundaries of the statute of limitations.

In short, class membership is objectively ascertainable. Lighthouse's arguments otherwise are without merit and stand in direct contradiction to the testimony of its own representative. The Court should certify the class.

### C. The Class Meets Each Of The Requirements Of Rule 23(A).

In addition to ascertainability, the Rule 23 requirements of numerosity, commonality, typicality, and adequacy are all met here. Defendant's arguments against each requirement reveal a misunderstanding of what must be shown at this stage of the proceedings.

#### 1. Lighthouse has testified to numerosity, and Plaintiffs need not identify each class member to satisfy Rule 23.

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). "[N]o strict numerical test exists," and the exact number of class members need not be pleaded or proved. *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005). Generally, forty (40) or more members is sufficient, *Celano*, 242 F.R.D. at 549, and classes that number in the thousands "clearly" satisfy the numerosity requirement. *See, e.g., Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007).

Here, Defendant's own CEO testified that Lighthouse called "thousands" of persons whose leads were purchased from All Web Leads and MediaAlpha. (Ex. A, 47:2–14.) In response, Lighthouse claims this is not enough:

8

> Plaintiffs simply contend, without more, that because Mr. Farro "testified that [LIG] called 'thousands' of persons whose leads were purchased from All Web Leads and MediaAlpha", that "evidence and common sense dictate that there are over 40 class members so as to render joinder impracticable in satisfaction of Rule 23(a)(1)." (Mot. p. 6.) However, neither the law nor the evidence supports this conclusion.

(Dkt. 31 at 9.) Defendant fails to cite any law or evidence that would demonstrate how "thousands" of similarly-situated consumers is somehow less than forty—likely because it does not exist. Instead, Lighthouse simply seems to be attempting to minimize its own admission. It also contends that numerosity is not satisfied because Plaintiffs have not specifically identified each and every individual that was called. (*Id.*) But this is not required for certification. Once again, class membership must be ascertain*able*, not ascertained, to support certification—the exact number of Class Members, and the identities of such Members, can be determined through Defendant's own records as part of the notice process. *Birchmeier*, 302 F.R.D. at 245; *see also Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2016 WL 10520133, at *4 (S.D. Ohio Dec. 15, 2016) ("[I]t [is] 'pure sophistry' for defendants to argue that class certification 'must be denied since the plaintiff is unable to state the exact number of persons affects' where '[t]he exact number of affected persons is known to the defendants who have the means to identify them at will.").

Defendant's attempt to compare this case to *Visser* also falls flat. In *Visser*, the plaintiff theorized that numerosity was satisfied based on an exhibit indicating the defendant's receipt of transferred calls, with no information about what the calls were, who placed the calls or to whom. *Visser v. Caribbean Cruise Line, Inc.*, No. 1:13-CV-1029, 2020 WL 415845, at *4 (W.D. Mich. Jan. 27, 2020). Here, no such theory or speculation is required—*Defendant itself has testified* that, during the relevant time period, it called "thousands" of persons after purchasing

9

the leads for such persons from All Web Media and LeadAlpha, (Ex. A at 46:15–47:17), and that all calls were made for the same purpose. (*Id.* at 42:6–43:10.)

Defendant's own admissions provide the evidence necessary to support numerosity.

### 2. The Class members share common issues at the heart of the claim.

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Commonality is a "permissive" standard, under which "'factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 640 (D. Colo. 1986) (*quoting Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied,* 460 U.S. 1069 (1983)); *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). A finding of commonality requires only a single question of law or fact common to the entire class. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir, 2007); *Silbaugh v. Viking Magazine Servs.,* 278 F.R.D. 389, 392 (N.D. Ohio 2012); *Dukes*, 131 S.Ct. at 2545, 2556.

At the core of Plaintiffs' claims are several common issues suited for class-wide determination, such as whether the calls were made using an ATDS,[1] whether the calls were made to encourage the purchase of Lighthouse's products or services, whether Lighthouse had

---

[1] Defendant argues at several points in its brief that the claims of Bond and Thompson are "very different" and cannot be combined in one certified class because one alleges a prerecorded call and the other alleges an autodialed call. (Dkt. 31 at 3, 10–11.) This is a distinction without a difference, as both autodialed and prerecorded calls are equally prohibited by the TCPA, and the class is defined in relation to the equipment used, which Defendant admitted was Vicidial for all of the calls it made. (*See* Ex. A at 27:12–16, 68:7–18.)

10

sufficient prior express written consent to place the calls at issue, and whether Lighthouse acted willfully. The litigation of each these issues will produce common *answers* across the entire class, satisfying commonality.

In arguing against commonality, Lighthouse cites to *Sandusky* for the proposition that consent presents an individualized issue. (Dkt. 31 at 11) (citing *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017)). But absent from Defendant's citation is the context that rendered the consent analysis individual in *Sandusky*—as a result of the FCC's waiver of liability for a particular rule, navigation of consent records required "a recipient-by-recipient inquiry that was prohibitive of class certification." *Sandusky*, 863 F.3d at 467. This is not the case here—Defendant claims to have consent for Plaintiffs and everyone it called as a result of purchasing their leads from All Web Media and LeadAlpha. (Dkt. 31 at 2; Ex. A at 42:12–17, 46:5–24.) Here, the supposed consent will be in the same form for all consumers whose consent was supposedly obtained by the lead generator—the question of adequacy may be commonly answered for all such persons. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party.").

In any event, Defendant only challenges one of the four common questions identified above and in the Motion. Commonality requires only one common issue for class-wide resolution, and this matter contains several. Commonality is satisfied.

### 3. Plaintiffs' claims are typical of the class.

11

To demonstrate typicality, "Plaintiffs need only show, as they have done here, that their interests are compatible and not antagonistic to the interests of the other class members." *Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1248 (D. Colo. 1983); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). That is, "the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The test is whether other class members have the same or similar injury and whether the action is based on conduct that is not unique to the named plaintiffs. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "A finding of commonality will ordinarily support a finding of typicality." *Barefield v. Chevron U.S.A., Inc.*, No. 86-CV-2427, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987).

Here, Plaintiffs alleged the same unsolicited calls from Lighthouse, using the same dialing system, as the calls made to all other class members for whom Defendant purchased leads in the same way—defendant acted the same way as to all putative class members. *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."). Defendant has no credible basis to dispute typicality, arguing only that there is insufficient evidence of the existence of other class members. (Dkt. 31 at 13.) But, once again, Lighthouse's own CEO testified that Defendant called "thousands" of people using the same Vicidial system and after purchasing leads in the same manner as it did for Bond and Thompson. (Ex. A at 42:6–43:10, 46:15–47:17, 68:7–18.) Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied here as well.

> **4.** **Defendant's argument against adequacy improperly seeks a merits determination.**

12

The final requirement of Rule 23(a) requires that the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the end, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Joseph*, 109 F.R.D. at 640 (quoting 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638–39). "[T]he adequacy requirement mandates that no conflicts of interest exist between the named plaintiffs and the absent class members," *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006), and adequacy is only defeated by actual conflicts. *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979).

Defendant does not refute the credentials of Plaintiffs' counsel, nor does (or can it) point to a conflict between Plaintiffs and the class. Rather, Lighthouse leans into its consent defense and asks the Court to assign weight to its position on the merits of the claim. (Dkt. 31 at 14.) As stated above, addressing the merits during Rule 23 proceedings is premature and inappropriate. *See Amgen*, 568 U.S. at 466. Plaintiffs meet the adequacy requirement necessary to support class certification, and Defendant's consent argument is irrelevant to that analysis.

> **D.     The Class Also Meets The Predominance And Superiority Requirements Of Rule 23(B)(3) As Well.**

In addition to satisfying the requirements of Rule 23(a), the proposed class is suited for certification under Rule 23(b)(3). As explained in the motion, the common issues in this case predominate over any individualized issues, and a class action is the superior method for resolving the claims of the class members resulting from Lighthouse's uniform conduct. The predominance requirement is satisfied where, as here, "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 814. (*quoting* 7AA Wright & Miller, Federal Practice &

13

Procedure § 1778 (3d ed. 2011)). The common questions identified above predominate over any supposed individualized issues. These are common issues that cut to the heart of the case that would outweigh any potential individualized issues. *See Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *8-9 (D. Colo. May 28, 2013).

Lighthouse does not make any specific arguments against predominance or superiority, referring simply to its other arguments regarding ascertainability and the supposed differences between the claims of the named Plaintiffs. (Dkt. 31 at 14–15.) But as reiterated above, class membership is ascertainable—it need not be ascertained at the time of certification to be ascertain*able*. *See Birchmeier*, 302 F.R.D. at 245. Further, the main issues in this case are common to all class members and predominate over any supposed individual issues. Plaintiffs and the class members received the same telemarketing calls, placed using the same equipment, and following Defendant's purchase of their leads from the same vendors. Defendant acted the same way as to all putative class members—this matter is well suited for class treatment, and the Court should find Rule 23(b)(3) is satisfied as well.

## IV. CONCLUSION

The proposed Class satisfies each of Rule 23's requirements for certification, as well as the implied requirement of ascertainability. Defendant's arguments against certification alternatively ask Plaintiffs to prove more than is necessary for certification and ask the Court to weigh on the merits of Lighthouse's defenses. Accordingly, the Court should grant class certification and award any additional relief as the Court deems necessary, reasonable, and just.

Respectfully Submitted,

**PLAINTIFFS JOSEPH BOND AND NICOLE THOMPSON**, individually and on behalf of all others similarly situated,

Dated: November 11, 2021            /s/      Patrick H. Peluso

14

One of Plaintiff's Attorneys

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
(720) 213-0675

*Pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers using the Court's electronic filing system on November 11, 2021.

                                                /s/ Patrick H. Peluso